**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC.<br>1331 L Street NW<br>Washington, DC 20005<br><br>      Plaintiff,<br><br>v.<br><br>RICHARD GRIEGO d/b/a FRONTERA REALTY CONSULTANTS, INC.<br>6145 S Kilpatrick Avenue, Apt. 25<br>Chicago, IL 60629,<br><br>      Defendant. | Civil Action No. _____<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff CoStar Realty Information, Inc. ("Costar" or "Plaintiff") brings this action against Defendant Richard Griego d/b/a Frontera Realty Consultants ("Griego" or "Defendant"), alleging, on knowledge as to its own acts and upon information and belief as to the acts of others, as follows:

**NATURE OF ACTION**

1. This is a case of willful copyright infringement and breach of contract. CoStar is the leading provider of information, marketing, and analytic services to commercial real estate professionals in the United States and United Kingdom (the "CoStar Service"). Defendant is a real estate appraiser who fully understood his legal obligations but deliberately cast them aside in order to circumvent CoStar's systems for lawful access to the CoStar Service.

2. The CoStar Service is an innovative, sought-after resource that is the result of the company's extraordinary investments, effort, and creativity over the last twenty-five years, along with its ongoing commitment to maintain and improve its offerings. The CoStar Service is used by tens of thousands of brokers, owners, developers, lenders, investment bankers, REITs, retailers, appraisers, governmental agencies, and others. CoStar provides its service by employing over one thousand professional researchers who proactively collect and analyze commercial real estate information. CoStar's researchers drive millions of miles, conduct hundreds of thousands of on-site building inspections and conduct millions of telephone interviews of brokers, owners and tenants. CoStar's field researchers physically inspect and photograph commercial real estate properties in virtually every metropolitan area in the United States, London and other parts of the United Kingdom.

3. Defendant is keenly aware that the CoStar Service is a proprietary, subscription-based service and that use is restricted to licensees that enter into written agreements with CoStar. Defendant knows that businesses are not allowed to share access to the CoStar Service. Nevertheless, without authorization, Defendant entered into an illicit arrangement with a CoStar customer, Accurate Commercial Appraisal Ltd. and its President John D. Olson ("Accurate Commercial"), to share a subscription to the CoStar Service, under which Griego repeatedly accessed and used the CoStar Service licensed to Accurate Commercial. Defendant's wrongful acts caused substantial injury to CoStar. Defendant's illicit arrangement with Accurate Commercial comes at the expense of their competitors, who also rely upon the CoStar Service, but who have obtained lawful access. Accordingly, CoStar brings this action based on the infringement of CoStar's copyrights in and to its valuable building photographs and breach of the agreements that govern access and use of the CoStar Service.

**PARTIES**

4. CoStar Realty Information, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 1331 L Street N.W., Washington, D.C. 20005.

5. Defendant Griego is an individual who resides at 6145 S Kilpatrick Avenue, Apt. 25, Chicago, Illinois 60629. Griego has conducted business as Frontera Realty Consultants, Inc. ("Frontera"). Frontera is a dissolved Illinois corporation. According to public records, it was involuntarily dissolved on April 9, 2010. Griego was the President and sole owner of Frontera.

**JURISDICTION AND VENUE**

6. This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331 as an action that arises under the laws of the United States. The Court further has exclusive federal jurisdiction pursuant to 28 U.S.C. § 1338(a) as a case arising under the Copyright Act.

7. This Court has supplemental jurisdiction over CoStar's claim arising under state law pursuant to 28 U.S.C. § 1367(a) because this claim is so related to Plaintiff's claim under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391, 1400 because a substantial part of the events giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

9. Personal jurisdiction over Defendant is proper in this District because Defendant is located in this District and conducts continuous and systematic business in this District. In

addition, personal jurisdiction over Defendant is proper in this District because Defendant has committed acts alleged herein in this District.

## BACKGROUND

10. Founded in 1987, CoStar has revolutionized the commercial real estate industry with a simple idea: empower brokers and other commercial real estate professionals with researched and unbiased commercial property information.

11. Since that time, CoStar has invested tens of millions of dollars each year to maintain the industry's largest research organization, along with state of the art software technology and research methods. As of January 31, 2014, CoStar's research team had approximately 1,123 trained professionals (research analysts and field researchers) who each year make millions of data changes, make more than 10,000 calls a day, canvass more than half a million properties nationwide, and take more than one million photographs. These researchers are constantly improving the CoStar Service through millions of phone, email and internet updates, field inspections, public records review, news monitoring and direct mail.

12. The end result is the CoStar Service, which supports better decision-making, facilitates transactions, and brings greater transparency, reliability, insight, and efficiency to the commercial real estate marketplace. The CoStar Service, among other things, offers licensed users an integrated suite of online service offerings that enables its licensees to find for themselves or their customers available space, match buyers to properties for sale, find tenants, research brokers, locate market-related information, and value commercial real estate sales transactions. CoStar's licensees can search CoStar's database by selecting from the more than 150 fields of information and analysis included in the file for each property to find those properties that suit their needs. CoStar's licensees can search through CoStar's database in

thousands of different ways to analyze various real estate markets, and thus access to CoStar's database greatly reduces the need for CoStar's licensees to spend time and money on conducting research to locate much of the very same information already collected, organized, developed and analyzed by CoStar.

13. The CoStar Service and the content therein are not part of a repository of information available for free. Rather, in exchange for a subscription fee, CoStar provides its services to businesses that enter into a written license agreement with CoStar. The written license agreement limits the subscriber's access and use of the CoStar Service to specific numbers of licensed users, licensed sites, and permitted and prohibited uses. The licensee is prohibited from providing others with access to or use of the CoStar Service or any codes that enable access. Access and use is limited to employees of the licensee, or independent contractors working out of the licensed site and exclusively for the licensee. Upon termination of employment, such authorized user is no longer permitted to access or use the CoStar Service or any codes that enable access.

14. Once a party executes a license agreement with CoStar, each of its authorized users is provided with a user identification and password and is given authorized use for Internet-based access to CoStar's subscription information services, at CoStar's website, www.costar.com, in accordance with the terms of the party's license agreement. An authorized user must input a valid user identification and password at the login area to gain authorized access to CoStar's restricted access information services for which they are licensed.

15. The login area at www.costar.com contains a prominent notice advising the user that "Login/Use Subject to Terms." The word "Terms" is hyperlinked to CoStar's actual Terms

of Use for its website, www.costar.com, and the services accessed therein. By clicking on the underlined word "Terms," the user can view the terms of use, which provide:

> By accessing or using this Site (or any part thereof), you agree to be legally bound by the terms and conditions that follow (the "Terms of Use") as we may modify them from time to time. These Terms of Use apply to your use of this Site, including the CoStar services offered via the Site. **They constitute a legal contract between you and CoStar, and by accessing or using any part of the Site you represent and warrant that you have the right, power and authority to agree to and be bound by these Terms of Use.** If you do not agree to the Terms of Use, or if you do not have the right, power, and authority to agree to and be bound by these Terms of Use, you may not use the Site. (emphasis added).

16. The authorized user must scroll through and accept the applicable online Terms of Use the first time they use the product as well as at periodic intervals thereafter.

17. In addition, the Terms of Use specifically explain that those portions of the website that require use of passcodes for access are restricted to employees and exclusive contractors of CoStar licensees. These individuals, also known as "Authorized Users," must be individuals that work solely for the CoStar licensee and not another company with real estate information needs. The Terms of Use further explain that the Authorized Users must be designated in the license agreement and work at a site identified in the license agreement.

18. Under the header "Prohibited Uses," the Terms of Use provide that "you shall not ... [a]ccess any portion of the [databases] unless you are an Authorized User for such [databases] using the Passcodes assigned to you by CoStar to access the components and services of the [databases] that your subscription authorizes you to access, subject to the terms contained therein and in these Terms of Use."

19. The Terms of Use also state that "[u]pon your breach of any term of these Terms of Use or the License Agreement, CoStar's remedies shall include any monetary benefits that accrued to you as a result of the breach, any damages incurred by CoStar related to your breach

6

and any other damages and relief available at law or in equity." The terms of use further provide that "CoStar shall be entitled to recover all costs, including attorney's fees."

## EVENTS GIVING RISE TO THE LAWSUIT

20. In July 2009, Accurate Commercial entered into a written license agreement (the "License Agreement") with CoStar for access to the CoStar Service, *i.e.*, CoStar Comps®, in exchange for payment of a monthly license fee.

21. Under the License Agreement, the licensee is Accurate Commercial, not Griego, Frontera, or anyone else.

22. Under Section 1 of the CoStar License, the users of the CoStar Service are limited in number and must work exclusively for the licensee, Accurate Commercial, at the single licensed location, 3-S-201 Arboretum Road, Glen Ellyn, IL 60137.

23. Under Section 2 of the License Agreement, Accurate Commercial agreed not to use the CoStar Service except as specifically permitted under the License Agreement.

24. Under Sections 1, 2, 12 and 13 of the License Agreement, Accurate Commercial agreed, among other things, not to: (a) provide others with access to or use of the CoStar Service, (b) sub-license or resell the CoStar Service to others, or (c) share with anyone else the specific IDs and passwords assigned by CoStar which enable access to the CoStar Service.

25. Nevertheless, Griego obtained systematic unauthorized access to and use of the CoStar Service in exchange for a monthly payment to Accurate Commercial.

26. In violation of the CoStar Terms of Use, Griego repeatedly accessed and used the CoStar Service to support his own research and other commercial needs, without a valid license or any other authorization from CoStar. Griego used the CoStar Service to save time and help him conduct business more effectively and efficiently. The unauthorized access via the CoStar

ID and password at issue is associated with more than 2,800 logins to the CoStar Service, along with over 180,000 page views. Moreover, Griego made unauthorized reproductions and/or distributions of CoStar's photographs and other materials, including, without limitation, those copyrighted works identified in the non-exhaustive, illustrative list attached hereto as **Exhibit A**.

27. The unauthorized and illicit activity alleged herein, by its very nature, occurs behind closed doors. As a result, much of the evidence concerning its scope lies in the hands of Defendants and third parties. As mentioned above, Exhibit A is a non-exhaustive, illustrative list. Based on the evidence available to CoStar at this time, including the number of unauthorized logins and the duration of unauthorized use, it is likely that there are thousands of instances of infringement or other violations of CoStar's rights.

**COUNT ONE FOR RELIEF**
**(Direct Copyright Infringement)**

28. CoStar re-alleges and incorporates herein by reference the foregoing allegations.

29. CoStar owns valid copyrights in the commercial real estate photographs taken by CoStar photographers. CoStar is the sole and exclusive owner or exclusive licensee of all right, title, and interest in and to the copyrights in such photographs and has registered the vast majority of those photographs with the United States Copyright Office on a quarterly basis.

30. Through the conduct averred herein, in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106(1), (3) and 501, Griego has infringed CoStar's copyrights in its commercial real estate photographs by reproducing and/or distributing such photographs without authorization, including, without limitation, those copyrighted CoStar photographs identified in the non-exhaustive, illustrative list attached hereto as **Exhibit A**.

31. Each infringement by Griego in and to CoStar's copyrighted photographs constitutes a separate and distinct act of infringement in violation of CoStar's rights under the U.S. Copyright Act.

32. Griego's acts of infringement were willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of CoStar and constitute willful copyright infringement.

33. CoStar is entitled to the maximum statutory damages, in the amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, under 17 U.S.C. § 504(b), as a direct and proximate result of the infringements by Griego, CoStar is entitled to its damages and to Griego's profits in amounts to be proven at trial which are not currently ascertainable.

34. CoStar is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

35. As a direct and proximate result of the foregoing acts and conduct, Griego's conduct is causing, and unless enjoined and restrained by this Court, will continue to cause CoStar to sustain substantial, immediate and irreparable injury that cannot be fully compensated by or measured in money damages. CoStar has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, CoStar is entitled to preliminary and permanent injunctive relief prohibiting further infringement of its copyrights and exclusive rights under copyright.

**COUNT TWO FOR RELIEF**
**(Breach of Contract)**

36. CoStar re-alleges and incorporates herein by reference the foregoing allegations.

37. Through the conduct averred herein, Griego entered into and agreed to be bound by the Terms of Use agreement.

9

38. CoStar's Terms of Use agreement is a valid and enforceable contract between CoStar and Griego.

39. Griego breached the Terms of Use agreement by, *inter alia*, accessing and using the CoStar Service without authorization from CoStar.

40. CoStar has been injured by Greigo's breach as described above. Among other things, Griego's breach of contract has caused CoStar to lose the license fee revenue associated with Griego purchasing a license agreement to the CoStar Service. Griego has also been unjustly enriched as a result of its unauthorized access. As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for injuries inflicted by Griego. Accordingly, CoStar is entitled to damages and preliminary and permanent injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, CoStar prays for judgment against Defendant as follows:

a) As to Counts I, a judgment against Defendant that he has infringed CoStar's copyrights in its photographs;

b) As to Count II, a judgment against Defendant that he has breached a contract with CoStar;

c) Granting a preliminary and permanent injunction restraining and enjoining Defendant and any of his agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with them, from (i) making any unauthorized access to or use or copying of any CoStar Service or any of the copyrighted photographs or other content contained therein, and (ii) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in

subparagraphs (i) through (ii) above; and ordering Defendant and any of his agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with him, to permanently delete and destroy all portions of any CoStar Service within their possession, and within ten (10) days provide CoStar with a signed affidavit certifying completion of such deletion/destruction;

d) As to Counts I, for statutory damages pursuant to 17 U.S.C. § 504(c), in amounts to be proven at trial, arising from Defendant's violations of CoStar's rights in its photographs under the Copyright Act or, in the alternative, at CoStar's election pursuant to 17 U.S.C. § 504(b), CoStar's actual damages, including Defendant's profits from infringement, in amounts to be proven at trial;

e) As to Count II, for compensatory damages in amounts to be proven at trial;

f) As to Counts I, for CoStar's costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

g) As to Counts II, for CoStar's costs, including reasonable attorneys' fees, pursuant to the CoStar Terms of Use agreement;

h) For prejudgment and post-judgment interest; and

i) For such other and further relief as is just.

## DEMAND FOR JURY TRIAL

CoStar requests a trial by jury.

Dated: April 1, 2014

By: */s/ Scott A. Zebrak*
Matthew J. Oppenheim
Scott A. Zebrak
OPPENHEIM + ZEBRAK, LLP
4400 Jenifer Street, NW, Suite 250
Washington, DC 20015
Tel: 202-621-9027
Fax: 866-766-1678
matt@oandzlaw.com
scott@oandzlaw.com

Floyd A. Mandell
Jeffrey A. Wakolbinger
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
Tel: 312-902-5200
Fax: 312-901-1061
floyd.mandell@kattenlaw.com
jeff.wakolbinger@kattenlaw.com

*Attorneys for Plaintiff*
COSTAR REALTY INFORMATION, INC.